UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN SMITH,

                    Plaintiff,

-against-

UNITED STATES MARSHALS SERVICE and EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,

                    Defendants.

19-CV-3572-LTS

MEMORANDUM ORDER

In this action against the United States Marshals Service (the "USMS") and the Executive Office for United States Attorneys (the "EOUSA," and with the USMS, "Defendants"), plaintiff John Smith,[1] proceeding pro se, alleges that Defendants have failed to respond adequately to his requests for agency records under the Freedom of Information Act ("FOIA"). (docket entry no. 8 ("Am. Compl.").) Defendants have moved for summary judgment. (docket entry no. 27.) The Court has jurisdiction of this action pursuant to 5 U.S.C. section 552(a)(4)(B).

The Court has considered the submissions of the parties carefully and, for the following reasons, Defendants' motion is granted to the extent it is brought on behalf of the USMS, and denied without prejudice to renewal to the extent it is brought on behalf of the EOUSA, upon the EOUSA's submission to the Court of supplemental information, as set forth below.

---

[1]     In a Sealed Order dated January 8, 2020, the Court granted Plaintiff's request to proceed anonymously, given the risks potentially posed to Plaintiff by public identification of him by name.

BACKGROUND[2]

In November 2009, Plaintiff was arrested pursuant to a New York State criminal complaint and committed to the custody of the City of New York, on Rikers Island. (Am. Compl. ¶ 1.) For one day in July 2010 and another in November 2010, Plaintiff was "transferred" to federal custody. (Id. ¶¶ 2-3.) In April 2011, after Plaintiff was convicted of his state court criminal charge and informed by the presiding state court judge that Plaintiff "would be transferred to federal custody to face federal charges" (docket entry no. 1 ("Compl.") ¶ 6), Plaintiff was "again picked up by federal agents, this time for approximately 77 days[,] and held in federal custody" at a correctional facility in Queens, New York (operated by the GEO Group, and referred to by the parties as "GEO"). (Am. Compl. ¶¶ 4-5 & Ex J.) In July 2011, he was returned to state custody, without having been "charged with any federal crimes" or having "testif[ied] or participate[d] in any federal cases." (Id. ¶¶ 6-7.) Ultimately, Plaintiff was sentenced to a custodial term of 25 years to life in connection with his state court conviction. (Id. ¶ 6; Compl. ¶ 15.)

Beginning in May 2016, Plaintiff submitted FOIA requests to a variety of federal agencies, seeking information principally related to his transfers between state and federal custody in 2010 and 2011, and his detention at GEO. (Am. Compl. ¶¶ 21-39.) As relevant here, Plaintiff submitted two such requests to the USMS, and two to the EOUSA.

Requests to the USMS

On June 16, 2016, Plaintiff submitted his first FOIA request to the USMS, seeking "any and all information held by your department or accessible to your department

---

[2]   The facts recited herein are drawn from the parties' submissions and are undisputed unless otherwise indicated.

pertaining to my 'pick up' and 'transfer' from Rikers Island to the Federal facility 'GEO' and to the Federal Headquarters in Manhatt[a]n." (Am. Compl. Ex. D; see also Declaration of Charlotte Luckstone (docket entry no. 28-1) ("Luckstone Decl.") ¶ 14.)  On July 22, 2016, the USMS acknowledged receipt of Plaintiff's request and stated that it had commenced a search for documents responsive to that request. (Am. Compl. Ex. H; Luckstone Decl. ¶ 15 & Ex. 1.)

On November 8, 2017, Plaintiff submitted a second FOIA request to the USMS, seeking:

> ALL documents and information pertaining to the detention of [Plaintiff] at the GEO Facility between April 2011 – July 2011.  This request is for all documents, materials and information pertaining to the transfer of [Plaintiff] from Rikers Island to the GEO QUEENS DETENTION FACILITY by UNITED STATES MARSHALS in April 2011 and back to RIKERS ISLAND from the GEO QUEENS DETENTION FACILITY by the UNITED STATES MARSHALS SERVICE in July 2011.

(Am. Compl. Ex. I; Luckstone Decl. ¶ 19 & Ex. 3.)

On December 14, 2017, the USMS mailed Plaintiff its final response to his first FOIA request, reporting that the USMS had "conducted a search of its files in the Southern District of New York and located nine pages of documents responsive to your request" (Am. Compl. Ex. J; Luckstone Decl. ¶ 16 & Ex. 2), and producing those nine pages to Plaintiff.  (Id.)

On January 3, 2020, more than eight months after Plaintiff commenced this action, the USMS sent Plaintiff a letter reporting that it was continuing to process his November 8, 2017, FOIA request, and writing that: "So we may more effectively utilize our limited resources, please advise regarding your continued interest in obtaining records responsive to your request." (Luckstone Decl. ¶¶ 19-23 & Ex. 4.)  Plaintiff responded, indicating his continued interest.  (Id.)

Beginning on or about July 9, 2020, the USMS conducted a search for records responsive to Plaintiff's second FOIA request.  (Luckstone Decl. ¶ 24.)  In so doing, the USMS searched its Justice Detainee Information System ("the main electronic database that houses all USMS prisoner records") for Plaintiff's name, USMS number, Federal Identification Number, and date of birth.  (Id. ¶¶ 24-30.)  "Given the delay in responding to Plaintiff's November 2017 FOIA request, as a matter of discretion, USMS decided to search for all records pertaining to Plaintiff, not simply records pertaining to his 2011 detention and transfer between facilities."  (Id. ¶ 27 n.3.)  After concluding its search, on July 22, 2020, USMS produced to Plaintiff a total of fourteen pages responsive to his two FOIA requests, including the nine pages originally produced to Plaintiff in December 2017, subject to certain redactions not challenged by Plaintiff here.  (Id. ¶¶ 30-32.)

Requests to the EOUSA

On April 19, 2018, after receiving an indication in the USMS's production of agency records that his 2011 transfer to federal custody had been pursuant to the direction of Assistant United States Attorney (AUSA) Nola Heller (Am. Compl. Ex. J), Plaintiff submitted his first FOIA request to the EOUSA.  In that request, Plaintiff wrote: "From April 29, 2011 to July 1, 2011 I was in federal custody pursuant to a writ of habeas corpus ad testificandum applied for by AUSA NOLA B. HELLER. I am requesting a copy of the Writ and the Affirmation in Support of the Application for the writ."  (Am. Compl. Ex. K.)

On July 3, 2018, Plaintiff submitted his second FOIA request to the EOUSA, requesting "any and all information pursuant [to] my transfer from state custody to federal custody" in 2011, including "writ of habeas corpus, federal indictment information, prisoner transfer information, district court signature, grand jury information, etc."  (Am. Compl. Ex. O.)

On September 19, 2018, the EOUSA mailed Plaintiff a letter response. The EOUSA's letter referred to a FOIA request no. "EOUSA-2018-004996," with a submitted date of "06/21/2018," and the subject "Transfer Records." It also stated, apparently in error, that Plaintiff's FOIA request had been referred to the Internal Revenue Service ("IRS"):

> The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act and/or Privacy Act request. The EOUSA is the official record keeper for all records located in this office and the various United States Attorney's offices. You requested records related to the U.S. Internal Revenue Service ("IRS"). EOUSA maintains information that is in the possession of EOUSA or by the individual United States Attorney's Offices. We have forwarded your request to IRS.

(Am. Compl. Ex. P; accord Declaration of Auborn Finney (docket entry no. 28-2) ("Finney Decl.") ¶ 6 & Ex. B.)  However, the EOUSA's September 19 letter also stated that Plaintiff should "contact them directly for the requested information at the following address:"

> Katherine A. Day, FOIA Officer
> Office of General Counsel
> United States Department of Justice Marshals Service
> CG-3 R1594
> Washington, DC 20530-1000

(Id.)  The same day, the EOUSA wrote to Officer Day, reporting that Plaintiff's FOIA request "was misdirected and received by this office," and that "[a]s your office may have records responsive to this request, we are referring it to you for a direct response to the requester."  (Id.)[3]

On August 27, 2020, after Defendants had filed their motion for summary judgment in this action, the Court issued an order directing Defendants to supplement their motion "clarifying whether the EOUSA performed any search of its own in response to plaintiff's FOIA request, in addition to forwarding that request to the USMS," and—in the event

---

[3]  As discussed below, Plaintiff disputes that the EOUSA in fact forwarded his FOIA request(s) to the USMS.

the EOUSA had not performed such a search—providing the EOUSA an opportunity to "perform a prompt further search for documents responsive to plaintiff's FOIA request." (docket entry no. 32 at 2-3.)

On September 11, 2020, the EOUSA reported that it had conducted such a search, beginning on September 1, 2020, in response to both of Plaintiff's FOIA requests. (docket entry no. 34; see also Declaration of Darian Hodge (docket entry no. 34-1) ("Hodge Decl.") ¶¶ 3-11.)[4] In connection with that search, Mr. Hodge searched for responsive records in four locations. First, he searched for Plaintiff's name in CASEVIEW, an "electronic database that contains records of any and all matters Assistant United States Attorneys at USAO-SDNY work on," yielding a case titled "US v. [Plaintiff's name], et al." (Id. ¶ 5.) A box of hard copy documents related to that case was identified and searched, but "[n]o responsive records were found." (Id.) Second, Mr. Hodge searched Lexis CourtLink, "a public access platform for court electronic records," for Plaintiff's full name, his full name with his first name abbreviated, "US v. [Plaintiff's name], et al.," "[Plaintiff's name], et al.," Plaintiff's Bureau of Prisons registration number, and "[Plaintiff's last name] AND Heller." (Id. ¶ 7.) That search yielded no results. (Id.) Third, Mr. Hodge arranged for "a comprehensive text-based search for any and all electronically-stored documents associated with the internal [USAO] number assigned to the

---

[4]  The search was performed under the direction of Darian Hodge, a FOIA officer for the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"), after the EOUSA determined that the only District with potentially responsive documents was this District. (docket entry no. 34-2 ¶ 6.) See also Steiniger v. I.R.S., No. 10-CV-0282 (JCF), 2011 WL 812103, at *2-4 (S.D.N.Y. Mar. 3, 2011) (approving as adequate a search performed by the EOUSA, which had "forwarded" the request to a contact person in the USAO-SDNY) aff'd, 471 F. App'x 80 (2d Cir. 2012); Patino-Restrepo v. U.S. Dep't of Justice, 246 F. Supp. 3d 233, 244 (D.D.C. 2017) ("EOUSA conducted a reasonable search, focusing on the USAO-EDNY where Plaintiff was prosecuted[.]"), aff'd, No. 17-5143, 2019 WL 1250497 (D.C. Cir. Mar. 14, 2019).

case entitled, 'US v [Plaintiff's name], et al.'" (Id. ¶ 8.) That search too yielded "no results." (Id.) Finally, on September 9, 2020—five days after the EOUSA informed Plaintiff that it had completed its search in response to his FOIA requests (see docket entry no. 34-2 ¶ 9)—Mr. Hodge arranged for a search of AUSA Heller's archived emails, using Plaintiff's full name as the only search term. (Hodge Decl. ¶ 10.) "That search yielded seven emails referencing Plaintiff, but none were responsive to Plaintiff's FOIA requests at issue." (Id.)

## DISCUSSION

The pending motion is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986), and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B)). In measuring adequacy, courts ask "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (citation omitted). Accord Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").[5] Adequacy "may be established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith," Adamowicz v. I.R.S., 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008), "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Iturralde, 315 F.3d at 314 (citation omitted). "Conversely, summary judgment in the agency's favor is inappropriate 'where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Justice, 463 F. Supp. 3d 474, 483 (S.D.N.Y. 2020) (quoting Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012)). In such cases, a district court may "direct the defendant to conduct additional searches," Immigr. Def. Project v. U.S. Immigr. & Customs Enf't Agency, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016), conduct an

---

[5]   The Second Circuit recognizes that the D.C. Circuit is "something of a specialist" in adjudicating FOIA disputes, "given the nature of much of its caseload." Whitaker v. U.S. Dep't of Com., 970 F.3d 200, 206 n.25 (2d Cir. 2020).

in camera review, "elicit[ ] additional detail from the government," or permit further discovery, where appropriate.  Assadi v. U.S. Citizenship & Immigr. Servs., No. 12-CV-1374 (RLE), 2015 WL 1500254, at *2 (S.D.N.Y. Mar. 31, 2015).

The Second Circuit has held that "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment."  Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

In this case, Plaintiff argues that both agencies' searches were inadequate, and that both agencies responded to Plaintiff's FOIA requests in bad faith.

Defendant USMS

The Court concludes that the USMS has met its burden of showing that it conducted an adequate search for records responsive to Plaintiff's requests, and that Plaintiff has not met his burden of showing that the USMS performed its search in bad faith.

The Luckstone Declaration adequately details the type of search performed (of the USMS's electronic database containing data pertaining to "USMS prisoners who are in USMS custody or have a federal arrest warrant issued, or are scheduled for a move between detention facilities," including "all data on USMS prisoners provided by federal, state, and local criminal justice agencies, courts, medical care professionals, public and private organizations, witnesses, informants, and other persons interviewed during fugitive investigations"), and the search terms used during that search ("Plaintiff's name, USMS number, FID, and date of birth").  (Luckstone Decl. ¶¶ 29-30.)  The USMS's search was notably broad: "[g]iven the delay responding to Plaintiff's November 2017 FOIA request, as a matter of discretion, USMS decided to search for all records pertaining to Plaintiff, not simply records pertaining to his 2011 detention and transfer between facilities."  (Id. ¶ 27 n.3.)  Moreover, as a result of its search, the USMS identified and

produced fourteen pages of responsive records to Plaintiff, with limited withholdings on grounds not challenged here.  (Id. ¶¶ 30-32.)  These efforts satisfied the agency's burden to perform an adequate search in response to Plaintiff's FOIA requests.[6]

Plaintiff's showing of alleged bad faith on the part of the USMS does not meet his burden of identifying evidence sufficient to impugn the agency's affidavits or otherwise warrant denial of summary judgment in favor of the USMS.  See Ctr. for Const. Rts. v. U.S. Dep't of Def., 968 F. Supp. 2d 623, 632 (S.D.N.Y. 2013) ("[O]nce the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide some tangible evidence that . . . summary judgment is otherwise inappropriate.") (citation omitted), aff'd, 765 F.3d 161 (2d Cir. 2014).  To be sure, as Plaintiff argues, the USMS's nearly three-year delay in responding to Plaintiff's second FOIA request was significant.  However, without more, an agency's delay does not render that agency's response one that should be treated as made in bad faith or impugn the credibility of the agency's affiants, at least where the agency ultimately performs an adequate and reasonable search for records.  See McLean on behalf of J.N.M. v. Soc. Sec. Admin., No. 17-CV-6978 (CM) (KHP), 2019 WL 2495333, at *5 (S.D.N.Y. Jan. 2, 2019) ("An agency's initial delay in responding to a FOIA request—even delays of several years—is not evidence of bad faith."), report and recommendation adopted, No. 17-CV-6978 (CM) (KHP), 2019 WL 1074273 (S.D.N.Y. Mar. 6, 2019); Bartko v. U.S. Dep't of Justice, 102 F. Supp. 3d 342, 353

---

[6]  As Plaintiff notes, the Luckstone Declaration does not detail the USMS's search in response to Plaintiff's FOIA request(s) forwarded to the USMS by the EOUSA in September 2018.  Nonetheless, because of the overlap of those requests with the requests Plaintiff submitted directly to the USMS, and because the USMS "search[ed] for all records pertaining to Plaintiff, not simply records pertaining to his 2011 detention and transfer between facilities," the agency's efforts in 2020, as described in the Luckstone Declaration, satisfied its obligations to respond to those FOIA requests, as well.

(D.D.C. 2015) ("mere delay in responding to a FOIA request is routinely found to be insufficient to support a finding of bad faith") (collecting cases). Similarly, bad faith is not established by the fact that the USMS has not produced a writ of habeas corpus ad testificandum that Plaintiff believes exists, see Garcia v. U.S. Dep't of Justice, Off. of Info. & Priv., 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) ("Speculation that other documents exist, without more, does not undermine the finding that the agency conducted a reasonable search.") (citation and internal quotation marks omitted), or by the fact of the USMS's discovery of additional records responsive to Plaintiff's requests during its search in 2020. See Conti v. U.S. Dep't of Homeland Sec., No. 12-CV-5827 (AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) ("In a similar vein, many courts have rejected the argument that the discovery of additional documents or later discovery of missing files renders a search unreasonable or conducted in bad faith.").

In light of the USMS's adequate search in response to Plaintiff's FOIA requests, and the absence of any evidence of bad faith on the part of the USMS, the Court grants Defendants' motion for summary judgment to the extent it is brought on behalf of the USMS.

Defendant EOUSA

The Court concludes, however, that the EOUSA has not carried its burden of showing that it has performed an adequate search in response to Plaintiff's FOIA requests, principally because the EOUSA has failed to explain its inconsistent use of search terms across its various searches and, in particular, its use of somewhat narrow search terms in certain of its electronic searches. (See docket entry no. 46 ("Pl. Opp. Ltr.") at 4 ("The EOUSA only searched

records pertaining to Plaintiff[']s name and the name of the associated AUSA. Such a limited search was inadequate.").)[7]

While "[f]ederal agencies have discretion to craft the search terms that they believe to be reasonably tailored to uncover documents responsive to a FOIA request," and FOIA petitioners "cannot dictate the search terms to be used," an "agency's choice of search terms is not conclusive," and "[w]here challenged, agencies have to explain why certain search terms, clearly relevant, were not used." Brennan Ctr. for Justice at New York Univ. Sch. of L. v. U.S. Dep't of Justice, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019) (citations omitted). A court's evaluation of an agency's search terms is "highly context specific." Nat'l Day Laborer Org., 877 F. Supp. 2d at 110 ("[T]he failure to use certain search terms will sometimes be fatal, sometimes unproblematic, and sometimes improper but harmless or at least mitigated.") (internal footnotes omitted).

---

[7] Plaintiff raises a number of other challenges to the method of the EOUSA's search for agency records. (Pl. Opp. Ltr. at 3-4, 17-22; docket entry no. 43 ("Pl. Opp. Mem.") at 13-20, 27-29.) Contrary to Plaintiff's arguments, however, the EOUSA was not required to interview witnesses (see Pl. Opp. Mem. at 20), or search for agency records in response to FOIA requests Plaintiff submitted to other agencies or components of the Department of Justice (see Pl. Opp. Ltr. at 3, 17; Pl. Opp. Mem. at 29), in order to perform an adequate search in response to Plaintiff's FOIA requests. See Ferguson v. U.S. Dep't of Educ., No. 09-CV-10057 (FM), 2011 WL 4089880, at *13 (S.D.N.Y. Sept. 13, 2011) ("the Department was not obligated to interview its employees to locate responsive records when it had searched all files likely to contain relevant information") (citing Saldana v. Fed. Bureau of Prisons, 715 F. Supp. 2d 10, 23 (D.D.C. 2010)); Moore v. Aspin, 916 F. Supp. 32, 36 (D.D.C. 1996) ("[T]he Department of Defense is not required to respond to a[ ] FOIA request directed at other agencies."). Similarly, the EOUSA was not required to search additional databases for communications between the USAO, on the one hand, and Plaintiff's state court counsel, the USMS, Rikers Island, the Bronx County District Attorney's office, and the GEO, on the other (see Pl. Opp. Ltr. at 4, 21-22), given that the EOUSA had identified several databases, including AUSA Heller's archived emails, reasonably likely to contain any such communications. Nor did the EOUSA improperly "limit[ ] Plaintiff's FOIA request to a search for a non-existent habeas ad testificandum" (Pl. Opp. Ltr. at 3) when it performed the broader (if inconsistent) searches described in the Hodge Declaration.

In this case, the EOUSA employed inconsistent search terms across its various electronic searches. It searched Lexis CourtLink—a database of public records that is relatively unlikely to yield responsive records, given that Plaintiff was never publicly charged with a federal crime, nor publicly compelled to testify in a federal proceeding—using a relatively broad set of search terms, including Plaintiff's full name, his full name with his first name abbreviated, "US v. [Plaintiff's name], et al.," "[Plaintiff's name], et al.," Plaintiff's Bureau of Prisons registration number, and "[Plaintiff's last name] AND Heller." (Hodge Decl. ¶ 7.) However, it searched AUSA Heller's archived emails—a source relatively more likely to yield responsive records, given the alleged role AUSA Heller had in Plaintiff's custodial transfers—only for Plaintiff's full name. (Id. ¶10.) Moreover, while the Hodge Declaration is somewhat unclear on this point, the EOUSA appears to have searched the USAO-SDNY's general electronic database only for documents "associated with the internal [USAO] number assigned to the case entitled 'US v [Plaintiff's name], et al.'" (Id. ¶ 8.)

While there may be a proper explanation for the EOUSA's use of inconsistent search terms across its several electronic searches, the agency has not provided one to the Court. Absent such an explanation, the EOUSA has failed to establish its entitlement to summary judgment. Roseberry-Andrews v. U.S. Dep't of Homeland Sec., 299 F. Supp. 3d 9, 25 (D.D.C. 2018) ("There may well be a good explanation for these inconsistent search methodologies, but Defendant does not provide it."); James Madison Project v. U.S. Dep't of State, 235 F. Supp. 3d 161, 169 (D.D.C. 2017) ("the searches are deficient because the agency—for no discernable reason—searched different data sets using different search terms and different date restrictions, even within the same bureau or office"); The Few, the Proud, the Forgotten v. U.S. Dep't of Veterans Affs., 254 F. Supp. 3d 341, 356 (D. Conn. 2017) ("An agency's declaration about a

search must reasonably explain why it selected certain search terms and rejected obvious alternatives.").

Having considered the further question of whether Plaintiff has established bad faith on the part of the EOUSA such as to preclude deference to its proffers or judgment in its favor (see Pl. Opp. Ltr. at 2-3, 7-16; Pl. Opp. Mem. at 7-12), the Court concludes that Plaintiff has not shown that the EOUSA responded to Plaintiff's FOIA requests in bad faith. As a preliminary matter, the EOUSA's initial decision to forward Plaintiff's FOIA request(s) to the USMS without performing a search of its own—while based on the arguably faulty proposition that those requests did not seek records maintained by the EOUSA—was not entirely without basis. See Sonds v. Huff, 391 F. Supp. 2d 152, 160 (D.D.C. 2005) (an agency "is not required to respond to a FOIA request that should be directed to another agency"), aff'd, No. 05-5428, 2006 WL 3093808 (D.C. Cir. June 22, 2006); LaCedra v. Exec. Off. for U.S. Att'ys, 317 F.3d 345, 348 (D.C. Cir. 2003) ("[I]n this case the EOUSA's interpretation, although erroneous, was at least colorable. Not every error bespeaks a knave."). Moreover, Plaintiff proffers insufficient evidence in support of his more serious charge—that the EOUSA, despite its claims, did not in fact forward his request(s) to the USMS. For instance, the fact that the EOUSA's letter dated September 19, 2018, which stated that Plaintiff's request(s) were being forwarded to the IRS, not the USMS, is of little moment, given that the forwarding address provided was the address of a FOIA officer employed by the USMS (Finney Decl. Ex. B), and the EOUSA has introduced evidence of a cover letter of the same date documenting its transmission to that FOIA officer. (Finney Decl. Ex. E.) Similarly, the September 19 letter's reference to a "submitted date" of June 21, 2018, when neither of Plaintiff's requests to the USMS were sent on that date, is not evidence of impropriety, where the letter plainly referred to Plaintiff's request(s) by listing

Plaintiff's full name and address, and listing the "Subject of Request" as "Transfer Records." (Finney Decl. Ex. B.)  Even assuming the "submitted date" was an error—rather than simply a date referring to the EOUSA's internal handling of Plaintiff's request(s)—neither that discrepancy nor the other facts proffered by Plaintiff support an inference that the EOUSA acted in bad faith.  See SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1202 (D.C. Cir. 1991) (mere "mix-up[s]" or "technical failings" may not support "an inference that [the agency] acted in bad faith").[8]

In light of the inconsistencies in the search terms applied by the EOUSA, however, the Court denies Defendants' motion for summary judgment to the extent it is brought on behalf of the EOUSA, without prejudice to renewal as set forth below.[9]

---

[8]   As Plaintiff emphasizes at some length (Pl. Opp. Ltr. at 3, 10-16; Pl. Opp. Mem. at 8), it is true that the USMS did not submit affirmative proof in this case of having received the forwarded request(s) from the EOUSA.  However, the Court declines to base a finding of bad faith on the part of the EOUSA on the USMS's omission of a fact from its evidentiary submissions in support of summary judgment.  See Wen Dong Zhao v. U.S. Dep't of State, 320 F. Supp. 3d 505, 510 (E.D.N.Y. 2018) (the presumption of good faith may be rebutted by "tangible evidence of bad faith," but cannot be rebutted by "[b]are allegations and speculation of bad faith") (citations omitted), aff'd, 776 F. App'x 733 (2d Cir. 2019).  In any event, as noted above, the search the USMS conducted in 2020—which, again, sought "all records pertaining to Plaintiff, not simply records pertaining to his 2011 detention and transfer between facilities" (Luckstone Decl. ¶ 27 n.3)—satisfied any obligations it had to respond to those forwarded requests.  See, e.g., Pitts v. Comm'r, No. 05-CV-1313 (GEL), 2005 WL 1278528, at *2 (S.D.N.Y. May 10, 2005) ("The eventual production of the tax returns, however, along with the extensive searches made in response to both of plaintiff's FOIA requests . . . conclusively belie any claim of unreasonably inadequate searches, bad faith or deliberate withholding of documents.").

[9]   The Court has considered Plaintiff's other various requests made in his opposition papers.  To the extent Plaintiff seeks leave to conduct discovery from the individuals involved in the forwarding of Plaintiff's request(s) from the EOUSA to the USMS (Pl. Opp. Ltr. at 23), the Court denies that request.  Carney, 19 F.3d at 812 ("In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations . . . or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate.") (citations omitted).  To the

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted to the extent it is brought on behalf of the USMS, and denied without prejudice to renewal to the extent it is brought on behalf of the EOUSA.  By **April 30, 2021**, the EOUSA shall re-conduct its electronic searches for agency records using a broad, uniform selection of search terms,[10] and shall file and serve on Plaintiff one or more supplemental declarations describing (and reporting the results of) those searches, and informing the Court of any productions made to Plaintiff as a result.  The EOUSA may renew its summary judgment motion in connection with such supplemental submission.

The Clerk of Court is respectfully directed to terminate the United States Marshals Service as a Defendant, and to terminate the motion at docket entry no. 27.

SO ORDERED.

Dated: New York, New York
       March 29, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

**Copy mailed by chambers to:**
Plaintiff John Smith

---

extent Plaintiff seeks to assert a FOIA claim against the Bureau of Prisons ("BOP") (see Pl. Opp. Mem. at 30; Am. Compl. Exs. A, C, D, E), there is no evidence that Plaintiff exhausted his administrative appeal rights as to that agency (see docket entry no. 28-3 ¶¶ 10, 12), or that Plaintiff was ever in BOP (as opposed to USMS) custody during his stay at the GEO.  See also Robert v. U.S. Dep't of Justice, 193 F. App'x 8, 9 (2d Cir. 2006) (affirming dismissal of FOIA claim for failure to exhaust administrative appeal rights).  To the extent Plaintiff seeks to reinstate his section 1983 claim(s), that request is denied on the grounds set forth in the Court's Order to Amend dated August 21, 2019 (docket entry no. 7), and Sealed Order dated January 8, 2020.  Finally, Plaintiff's request for the appointment of counsel and his request for the Court to conduct an in camera review (see Opp. Ltr. at 10, 23-25) are denied without prejudice to renewal following the Court's receipt of any supplemental submissions from the EOUSA.

[10]   To the extent the EOUSA must use inconsistent search terms across its electronic sources of agency records, it shall explain those inconsistencies in its supplemental declaration(s).