UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN SMITH,

                    Plaintiff,

          -against-                                            19-CV-3572-LTS

EXECUTIVE OFFICE FOR UNITED STATES
ATTORNEYS,

                    Defendant.

---

MEMORANDUM ORDER

In this action against the Executive Office for United States Attorneys (the "EOUSA"), plaintiff John Smith,[1] proceeding pro se, alleges that the EOUSA has failed to respond adequately to his requests for agency records under the Freedom of Information Act ("FOIA").  (Docket entry no. 8 ("Am. Compl.").)  On March 29, 2021, the Court issued a Memorandum Order denying the EOUSA's first motion for summary judgment without prejudice to renewal upon a showing that the EOUSA had performed an adequate search in response to those requests.  (Docket entry no. 47 (the "March 29 Order").)  The EOUSA now renews its motion for summary judgment.  (Docket entry no. 51.)  The Court has jurisdiction of this action pursuant to 5 U.S.C. section 552(a)(4)(B).

The Court has considered the submissions of the parties carefully and, for the following reasons, grants the EOUSA's renewed motion for summary judgment.

---

[1]     In a Sealed Order dated January 8, 2020, the Court granted Plaintiff's request to proceed anonymously, given the risks potentially posed to Plaintiff by public identification of him by name.

BACKGROUND[2]

Plaintiff's FOIA requests and the EOUSA's responses to them are detailed at greater length in the Court's March 29 Order, familiarity with which is assumed. Plaintiff submitted the two FOIA requests at issue in this case to the EOUSA, on April 19, 2018, and July 3, 2018, each related to Plaintiff's transfer between state and federal custody in 2011. (Am. Compl. Exs. K & O.) The April 19 request sought "a copy of the Writ and the Affirmation in Support of the Application for the writ" of habeas corpus ad testificandum applied for by Assistant United States Attorney ("AUSA") Nola Heller, which apparently facilitated those transfers. (Am. Compl. Ex. K.) The July 3 request more broadly sought "any and all information pursuant [to] my transfer from state custody to federal custody" in 2011, including "writ of habeas corpus, federal indictment information, prisoner transfer information, district court signature, grand jury information, etc." (Am. Compl. Ex. O.)

The EOUSA reportedly interpreted Plaintiff's requests to seek documents in the custody of the United States Marshals Service ("USMS"), referred at least one of Plaintiff's requests to that agency, and conducted no search of its own documents in response to Plaintiff's FOIA requests. (See March 29 Ord. at 5-6.)[3] After Plaintiff filed this case and the Court directed the EOUSA to do so (see docket entry no. 32), the agency in September 2020 conducted and reported the results of a search of its own records; that search yielded no responsive documents. (March 29 Ord. at 6-7.)

---

[2]     The facts recited herein are drawn from the parties' submissions and are undisputed unless otherwise indicated.

[3]     The EOUSA's proffered forwarding of Plaintiff's request to the USMS, and Plaintiff's dispute of the EOUSA's account of that forwarding, are discussed at greater length in the Court's March 29 Order.

In the March 29 Order on the EOUSA's first motion for summary judgment, the Court concluded that Plaintiff had not established bad faith on the part of the EOUSA such as to preclude deference to the agency's factual proffers or judgment in its favor. (March 29 Ord. at 14-15.) The Court further concluded, however, that the EOUSA had not met its burden to show that it had conducted an "adequate" search for records responsive to Plaintiff's FOIA requests, particularly in light of its use of inconsistent (and in some cases quite limited) search terms across its various electronic searches. (Id. at 12-14.) The Court therefore denied the EOUSA's motion for summary judgment without prejudice to renewal after the agency had re-conducted its electronic searches for agency records "using a broad, uniform selection of search terms," had filed and served on Plaintiff "one or more supplemental declarations describing (and reporting the results of) those searches," and had informed the Court "of any productions made to Plaintiff as a result." (Id. at 16.) That renewed motion is now before the Court.

### DISCUSSION

The pending motion is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), and the Court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).

"In order to prevail on a motion for summary judgment in a FOIA case, the

defending agency has the burden of showing that its search was adequate and that any withheld

documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807,

812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B)).  In measuring adequacy, courts ask "whether

the search was reasonably calculated to discover the requested documents, not whether it actually

uncovered every document extant." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d

Cir. 1999) (citation omitted).  Accord Iturralde v. Comptroller of Currency, 315 F.3d 311, 315

(D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of

the search, but by the appropriateness of the methods used to carry out the search.").[4]  Adequacy

"may be established solely on the basis of the Government's relatively detailed, non-conclusory

affidavits that are submitted in good faith," Adamowicz v. I.R.S., 552 F. Supp. 2d 355, 361

(S.D.N.Y. 2008), "setting forth the search terms and the type of search performed, and averring

that all files likely to contain responsive materials . . . were searched." Iturralde, 315 F.3d at

314-15 (citation omitted).  "Conversely, summary judgment in the agency's favor is

inappropriate 'where the agency's response raises serious doubts as to the completeness of the

agency's search, where the agency's response is patently incomplete, or where the agency's

response is for some other reason unsatisfactory.'" NAACP Legal Def. & Educ. Fund, Inc. v.

U.S. Dep't of Justice, 463 F. Supp. 3d 474, 483 (S.D.N.Y. 2020) (quoting Nat'l Day Laborer

Org. Network v. U.S. Immigr. & Customs Enf't Agency, 877 F. Supp. 2d 87, 96 (S.D.N.Y.

2012)).  In such cases, a district court may "direct the defendant to conduct additional searches,"

Immigr. Def. Project v. U.S. Immigr. & Customs Enf't Agency, 208 F. Supp. 3d 520, 527

---

[4]     The Second Circuit recognizes that the D.C. Circuit is "something of a specialist" in
        adjudicating FOIA disputes, "given the nature of much of its caseload." Whitaker v. U.S.
        Dep't of Com., 970 F.3d 200, 206 n.25 (2d Cir. 2020) (citation omitted).

(S.D.N.Y. 2016), conduct an <u>in camera</u> review, "elicit[ ] additional detail from the government,"

or permit further discovery, where appropriate.  <u>Assadi v. U.S. Citizenship & Immigr. Servs.</u>,

No. 12-CV-1374 (RLE), 2015 WL 1500254, at *2 (S.D.N.Y. Mar. 31, 2015).

   The Second Circuit has held that "special solicitude should be afforded <u>pro se</u>

litigants generally, when confronted with motions for summary judgment."  <u>Graham v. Lewinski</u>,

848 F.2d 342, 344 (2d Cir. 1988).

   In its renewed motion, the EOUSA argues that its renewed search for agency

records was adequate, and that the three responsive documents it withheld from production fall

within a FOIA exemption.

<u>Adequacy of Search</u>

   The Court concludes that the EOUSA has now met its burden of showing that it

conducted an adequate search for records responsive to Plaintiff's FOIA requests.

   EOUSA's uncontroverted submissions demonstrate that, in its renewed search,

the EOUSA searched all of the electronic sources likely to have information responsive to

Plaintiff's requests, including CaseView (an electronic database containing records of matters

that AUSAs work on), Lexis CourtLink (a public access platform for court electronic records),

and locally stored electronic files, as well as AUSA Heller's archived emails, using a broad set of

search terms, including Plaintiff's USAO-SDNY ID number, USMS ID number, NYS ID

number, NYDOC ID number, SSN, federal ID number, "U.S. v. [Plaintiff's Name], et al.," and

various alternative spellings of Plaintiff's name.  (Docket entry no. 52-1 ¶¶ 7-9.)  The EOUSA

also asked the Clerk's Office of this Court for any relevant records.  (<u>Id.</u> ¶ 10.)  Those searches

yielded 136 pages of records, which included four documents (spanning eleven pages) deemed

responsive by the agency.  (<u>Id.</u> ¶ 11.)  The EOUSA produced one of those four documents: a

two-page proffer agreement signed by Plaintiff's state court counsel and AUSA Heller dated July

14, 2010 (and listing "dates of continuation" of November 9, 2010, and April 28, 2011).  (Docket

entry no. 56 ("Finney Decl.") Ex. A.)  It withheld three others: "an unsigned, three-page draft

Sealed Writ of Habeas Corpus [ ]; a draft, unsigned three-page Sealed Affirmation [ ]; and a

final, signed three-page Sealed Writ of Habeas Corpus."  (Finney Decl. ¶ 8.)

In this context of Plaintiff's FOIA requests, the EOUSA's search was "reasonably

calculated to discover the requested documents."  Grand Cent. P'ship, 166 F.3d at 489 (citation

omitted).  The EOUSA employed a broad set of search terms across several electronic databases,

including the archived emails of AUSA Heller, a source particularly likely to yield responsive

documents about Plaintiff's transfer to and from federal custody in 2011.  Indeed, although the

adequacy of a search is measured by its methods and not its results, Conti v. U.S. Dep't of

Homeland Sec., No. 12-CV-5827 (AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014), it

is notable that the EOUSA's search apparently succeeded in locating the writ of habeas corpus

and affirmation in support Plaintiff had requested in the first place.  For these reasons and the

reasons set forth in the March 29 Order (at 12 n.7), the EOUSA has met its burden of showing

the adequacy of its search.

Applicability of Exemption 3

As noted above, the EOUSA withheld from production to Plaintiff a signed writ

of habeas corpus, a draft version of that writ, and a draft affirmation in support of that writ.

(Finney Decl. ¶ 8.)  It withheld these documents primarily on the ground that they are exempt

from disclosure under FOIA's third exemption, which removes from FOIA's scope documents

which are "specifically exempted from disclosure by statute," 5 U.S.C.A. § 552(b)(3) (Westlaw

through P.L. 117-80), and Federal Rule of Criminal Procedure Rule 6(e).  That Rule "prohibits

certain persons designated therein (including government attorneys) from 'disclos[ing] a matter occurring before the grand jury,' Fed. R. Crim. P. 6(e)(2)(B), and, although a rule is not generally considered to be a statute, it qualifies as one under FOIA because the Congress has enacted it into positive law.'" Murphy v. Exec. Off. for U.S. Att'ys, 789 F.3d 204, 206 (D.C. Cir. 2015).  Therefore, "information related to a grand jury matter may be withheld under exemption 3 'if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses.'"  Id. (citing Hodge v. FBI, 703 F.3d 575, 580 (D.C. Cir. 2013)).

The EOUSA submits that each of the three documents withheld in this case—the draft and final writ of habeas corpus, as well as the draft affirmation—"expressly state that Plaintiff's presence in federal custody was being sought in connection with a case being investigated by a grand jury in the Southern District of New York."  (Finny Decl. ¶ 11.)  By their very nature, therefore, disclosure of these documents would reveal at least one secret aspect of the grand jury's investigation (the identify of witnesses), if not others.  Indeed, the District of Columbia Circuit has held that writs of habeas corpus ad testificandum issued in connection with grand jury proceedings fall "categorically" within the scope of FOIA's third exception.  Lopez v. Dep't of Just., 393 F.3d 1345, 1350 (D.C. Cir. 2005) ("[W]rits of habeas corpus ad testificandum and 'requests for production of federal or state prisoners' submitted by the prosecutor for the purpose of securing testimony before the grand jury . . . fall within FOIA's third exemption.").  Accord Lazaridis v. U.S. Dep't of Just., 766 F. Supp. 2d 134, 146 (D.D.C. 2011) (following Lopez and finding that grand jury subpoenas and the names and identifying information of individuals subpoenaed to testify before the grand jury were properly withheld under Exemption 3).

Plaintiff's arguments against the applicability of Exemption 3 are unavailing. Though Plaintiff notes that he is perhaps the only the person whose secrecy would be infringed by disclosure of the withheld documents, and that he has a strong need for those documents, the propriety of an agency's withholding pursuant to Rule 6(e) and FOIA Exemption 3 generally does not depend on the identity or need of the requester, Price v. U.S. Dep't of Just. Att'y Off., 865 F.3d 676, 680 (D.C. Cir. 2017) ("the identity of a requester is generally irrelevant to whether an exemption applies"); Petrucelli v. Dep't of Just., 453 F. Supp. 3d 126, 134 (D.D.C. 2020) ("a requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA"), and Plaintiff has not shown any particularized need in this case.  See also Freeman v. Exec. Off. of US Att'ys, No. 19-CV-00879-CMA-KMT, 2019 WL 6918215, at *4 (D. Colo. Dec. 19, 2019) (collecting cases upholding exemption even where the only Rule 6(e) materials sought concerned the requester, and noting that a "particularized need" is not one of the exceptions to Rule 6(e)).  Moreover, the agency has not waived Rule 6(e)'s protections over those documents by virtue of the now-public fact that the writ and affirmation exist, because Plaintiff's identity remains concealed, as do the details of the testimony sought to be presented before the grand jury, and there is no claim that any of the documents themselves are in the public domain.  Boehm v. F.B.I., 948 F. Supp. 2d 9, 27 (D.D.C. 2013) ("[W]hen information is sufficiently widely known it can lose its character as Rule 6(e) material. . . . The problem here, though, is that plaintiff has not supplied the Court with any evidence that the information being withheld was widely publicized or even disclosed to the public at all.") (citations and internal quotation marks omitted).

The Court appreciates Plaintiff's frustration at having repeatedly requested production of the writ of habeas corpus ad testificandum which facilitated his transfer to federal

custody, only to have the agency represent to him that it has successfully located it and is

withholding it.  However, the interests in grand jury secrecy embodied in Rule 6(e), which call

for the EOUSA to withhold that writ from disclosure in this case, are some of the same interests

that animated Plaintiff's request to proceed anonymously in this case, as well as the Court's

granting of that request.

Because each of the three documents withheld by the EOUSA falls squarely

within the scope of Rule 6(e), the Court concludes that the EOUSA has met its burden of

showing that the withheld documents "fall within an exemption to the FOIA."  Carney, 19 F.3d

at 812.[5]

Plaintiff's Remaining Arguments

Plaintiff opposes entry of judgment in EOUSA's favor on a number of other

grounds, several of which were addressed by the Court in its March 29 Order.  (See March 29

Ord. at 15 n.8 & n.9.)  The Court addresses Plaintiff's principal remaining challenges below.

First, Plaintiff renews his arguments concerning the EOUSA's "bad faith" (and

his attendant requests for leave to take discovery, and for the Court to conduct an in camera

review of documents either withheld or deemed non-responsive).  Plaintiff argues in particular

that the EOUSA's location of the writ of habeas corpus at this stage, after its earlier failed

efforts, is further evidence that the agency's prior search efforts were in bad faith.  However, the

Court cannot fault the EOUSA for performing the more thorough search directed by the Court,

and declines to penalize the agency for its subsequent discovery of documents responsive to

Plaintiff's requests.  See Pub. Citizen v. Dep't of State, 276 F.3d 634, 645 (D.C. Cir. 2002)

("[W]e have previously declined to find subsequent disclosure as evidence of bad faith,

---

[5]      The Court therefore does not reach the EOUSA's other proffered bases for withholding.

reasoning that 'to effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure.'") (citation omitted); <u>Conti</u>, 2014 WL 1274517, at *15 ("many courts have rejected the argument that the discovery of additional documents or later discovery of missing files renders a search unreasonable or conducted in bad faith").

Second, Plaintiff requests that the Court either direct the EOUSA to produce a <u>Vaughn</u> index or conduct an <u>in camera</u> review of the documents the agency has withheld or deemed non-responsive.  There is no fixed rule requiring an agency to submit a <u>Vaughn</u> index in every case, <u>Judge Rotenberg Educ. Ctr., Inc. v. U.S. Food & Drug Admin.</u>, 376 F. Supp. 3d 47, 65 (D.D.C. 2019), and the Court declines to require one here, where the number of withheld documents is few and the contents of those documents are adequately described.  Similarly, the Court declines in its discretion to conduct an <u>in camera</u> review, a "last resort" to be used when agency affidavits are conclusory or contradicted by the record, or where the Court has made a finding of bad faith.  <u>Khatchadourian v. Def. Intel. Agency</u>, 453 F. Supp. 3d 54, 76 (D.D.C. 2020).

Third, Plaintiff argues that the Court should award him damages under the Privacy Act or attorneys' fees as the prevailing party in this FOIA action.  The Privacy Act permits an individual, in some circumstances, to file a civil action against an agency for failure to maintain its records about that individual with the requisite level of accuracy, and to recover an award of damages where the agency's failure is deemed "intentional or willful."  5 U.S.C. section 552a(g); <u>Otero v. Dep't of Just.</u>, 292 F. Supp. 3d 245, 251 (D.D.C. 2018), <u>aff'd</u>, No. 18-5080, 2019 WL 4565497 (D.C. Cir. Sept. 4, 2019).  Plaintiff has framed no such claim in this case.  Similarly, Plaintiff has not shown his entitlement to attorneys' fees under FOIA, since it is

well established in this Circuit that "pro se litigants are generally not eligible for prevailing party

attorneys' fee awards under the FOIA." Pietrangelo v. U.S. Army, 568 F.3d 341, 343 (2d Cir.

2009).

The Court has considered Plaintiff's remaining arguments in opposition to the

EOUSA's renewed motion for summary judgment and, to the extent they are not addressed in

this Memorandum Order or in the Court's March 29 Order, finds them without merit.

<span style="font-variant:small-caps">Conclusion</span>

For the foregoing reasons, the EOUSA's renewed motion for summary judgment

is granted.

This Memorandum Order resolves docket entry no. 51.

The Clerk of Court is respectfully directed to enter judgment in accordance with

this Memorandum Order, the Court's Memorandum Order dated March 29, 2021 (docket entry

no. 47), and the Court's sealed Order to Amend dated August 21, 2019 (docket entry no. 7), and

to close this case.

SO ORDERED.

Dated: New York, New York
February 9, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy mailed by chambers to:**
Plaintiff John Smith