UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN SMITH,

                Plaintiff,

-against-

EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,

                Defendant.

19-CV-3572-LTS

MEMORANDUM ORDER

        The Court has received pro se Plaintiff John Smith's motion for reconsideration (docket entry no. 82 ("Motion")) of the Court's Memorandum Order dated February 9, 2022 (docket entry no. 76 ("Feb. 9 Ord.")), which granted the renewed motion for summary judgment filed by Defendant the Executive Office for United States Attorneys (the "EOUSA") and directed entry of judgment in the EOUSA's favor.[1]

        The Court has considered the submissions of the parties carefully and, for the following reasons, the Motion is granted to the extent it seeks an award of Plaintiff's costs incurred in this action and is otherwise denied.

DISCUSSION

        A motion for reconsideration is not intended as "a vehicle for relitigating old issues, presenting the case under new theories . . . or otherwise taking a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (internal

---

[1] In a Sealed Order dated January 8, 2020, the Court granted Plaintiff's request to proceed anonymously, given the risks potentially posed to Plaintiff by public identification of him by name.

quotation marks and citation omitted).  Indeed, reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted).  To warrant reconsideration, the moving party bears the burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).

Liberally construed, Plaintiff's motion seeks reconsideration of the Court's February 9 Order on five grounds, including (1) that the Court should reconsider its determination that the EOUSA did not respond to Plaintiff's FOIA requests in bad faith, (2) that the Court should reconsider its FOIA Exemption 3 analysis because the information in the documents withheld by the EOUSA has already been made public, (3) that some information in those documents is segregable from any properly-withheld portions, (4) that certain non-parties "fraudulently informed" Plaintiff about the basis of his transfer from state to federal custody in 2011, such that Plaintiff needs disclosure of the withheld documents to pursue claims arising from that transfer, and (5) that Plaintiff should be awarded his costs in litigating this action.

Plaintiff's first three arguments in favor of reconsideration raise issues which the Court has previously considered and decided in the EOUSA's favor, and do not present any intervening change of controlling law, availability of new evidence, or need to correct a clear error or prevent manifest injustice as to those issues.  First, the Court held in its March 29, 2021, Memorandum Order on the EOUSA's first motion for summary judgment (docket entry no. 47 ("March 29 Ord.")) that Plaintiff had not shown that the EOUSA responded to Plaintiff's FOIA requests in bad faith.  (Id. at 14-15.)  Plaintiff identifies no law or facts the Court overlooked in

making that determination.² Second, the Court considered (in its February 9 Order) Plaintiff's proffers as to the already-public nature of some of the information in the documents withheld by the EOUSA, and concluded that the EOUSA nonetheless properly withheld those documents pursuant to FOIA Exemption 3 and Federal Rule of Criminal Procedure 6(e). The transcripts submitted by Plaintiff (Motion Ex. C) do not affect the Court's conclusion that "the agency has not waived Rule 6(e)'s protections over those documents . . . because Plaintiff's identity remains concealed, as do the details of the testimony sought to be presented before the grand jury, and

---

² On reply, Plaintiff submits (1) a letter dated June 21, 2011, from his former counsel to Assistant United States Attorney ("AUSA") Nola B. Heller, referencing an email from attorney Heller "wherein [she] requested a final proffer meeting" with Plaintiff "during the week of June 20, 2011" (docket entry no. 90 ("Reply") Ex. E), as well as (2) a letter from Plaintiff's former counsel to an Assistant District Attorney in the Bronx County District Attorney's Office, copied to AUSA Heller, requesting that Plaintiff be returned from federal to state custody. (Id. Ex. F.) According to Plaintiff, these letters and the referenced email should have been produced by the EOUSA as they "all fall under the parameters" of Plaintiff's FOIA requests (Reply at 3), and the failure to produce them further evidences the EOUSA's bad faith.

A reply in support of a motion for reconsideration is not a vehicle for the introduction of supplemental evidence which a party has possessed since the outset of a case. Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P., 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015) ("A motion to reconsider is not supposed to treat the court's initial decision as the opening of a dialogue in which [the party making the motion] may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." (citation and internal quotation marks omitted)); Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, 324 F. Supp. 3d 387, 395 (S.D.N.Y. 2018) ("Courts in this District have frequently declined to consider evidence first submitted on reply." (citation omitted)). Consideration of those submissions would not in any event warrant reconsideration. First, there is no evidence that AUSA Heller's June 21, 2011, email to Plaintiff's former counsel "wherein [she] requested a final proffer meeting" concerned Plaintiff's transfer between state and federal custody, the principal subject of his FOIA requests to the EOUSA. Second, as explained in the February 9 Order, the adequacy of a FOIA search is measured by its methods, not its results. (Feb. 9 Ord. at 6.) Third, given Plaintiff's submission of these letters on reply, the EOUSA has not had an opportunity to respond as to, among other things, whether the agency's record retention policies would have required the EOUSA to retain the correspondence received by AUSA Heller for the approximately seven-year period between the dates of those letters and Plaintiff's pertinent FOIA requests.

there is no claim that any of the documents themselves are in the public domain." (Feb. 9 Ord. at 8.) Third, Plaintiff's general segregability argument that the EOUSA "can redact names and witness[es] as applicable" is both too late, given that the Plaintiff did not make that argument in response to the EOUSA's proffer of admissible evidence that it complied with the FOIA's segregability requirements (see docket entry no. 52 at 9-10; docket entry no. 56 ¶ 20), and too generic and speculative to overcome the EOUSA's evidentiary proffer in that regard.

Plaintiff's fourth argument in favor of reconsideration is that "[w]ithout the information the EOUSA seeks to withhold, Plaintiff cannot challenge the validity" of the writ of habeas corpus ad testificandum withheld by the EOUSA, or the legality of his transfer between state and federal custody in 2011 "under a false pretense to be prosecuted." (Motion at 6.) In light of Plaintiff's pro se status, the Court construes Plaintiff's argument to be that the Court should authorize disclosure of the writ of habeas corpus ad testificandum under Federal Rule of Criminal Procedure 6(e)(3)(E)(i), which provides that the Court may authorize disclosure of a grand jury matter "preliminarily to or in connection with a judicial proceeding"—namely, Plaintiff's claims based on the lack of any legal authority for his transfer from state to federal custody given the purported deficiencies in the writ authorizing such transfer. (See docket entry no. 43 at ECF page 9 (Plaintiff characterizing his claims in his Amended Complaint as based on "two inescapable conclusions, either A) the agencies are improperly withholding FOIA documents, or B) Defendants transferred Plaintiff between jurisdictional sovereignties illegally on multiple occasions").) However, a "'judicial proceeding' does not include a FOIA proceeding instituted to obtain such disclosure," Malizia v. U.S. Dep't of Just., 519 F. Supp. 338, 346 n.40 (S.D.N.Y. 1981), and Plaintiff has not provided the Court with any non-speculative basis to conclude that the writ authorizing his transfer to federal custody was invalid, or that he

has a plausible basis to commence a separate "judicial proceeding" based on such invalidity. Without more, Plaintiff's speculation that disclosure of the withheld writ could theoretically assist him in framing a separate claim in this or another proceeding does not warrant an order from this Court directing disclosure of the withheld documents pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i).  See Fed. R. Crim. P. 6(e)(3)(E) (listing instances in which a Court "may" authorize disclosure); McKeever v. Barr, 920 F.3d 842, 846 (D.C. Cir. 2019) ("[T]his court's precedents . . . require a district court to hew strictly to the list of exceptions to grand jury secrecy[.]").

Plaintiff's final argument in favor of reconsideration is that the Court should award him his costs incurred in litigating this FOIA action, which, Plaintiff proffers, consist of a $350 filing fee and "more than $150.00 in mailing and copy fees."  (Motion at 7-8.)  While the February 9 Order denied Plaintiff's application for an award of attorneys' fees—which are not recoverable by pro se parties in FOIA actions (see Feb. 9 Ord. at 10-11)—the Court did not consider the question of costs.

Under 5 U.S.C. section 552(a)(4)(E)(i), "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  A plaintiff has "substantially prevailed" where that plaintiff has obtained relief through either "a judicial order, or an enforceable written agreement or consent decree," or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  Id. § 552(a)(4)(E)(ii). Accord Warren v. Colvin, 744 F.3d 841, 845 (2d Cir. 2014) ("Congress intended this amendment to prevent federal agencies from denying meritorious FOIA requests, only to voluntarily comply with a request on the eve of trial to avoid liability for litigation costs.").

Once a plaintiff has shown his or her eligibility for an award of fees and costs under section 552(a)(4)(E), many courts have applied a four-factor test long applied in the D.C. Circuit to determine whether that eligible plaintiff is also "entitled" to such an award. Am. Oversight v. U.S. Dep't of Just., 375 F. Supp. 3d 50, 65 (D.D.C. 2019) ("Under the entitlement prong, the Court must weigh four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." (citation and internal quotation marks omitted)).  The Second Circuit Court of Appeals referenced that four-factor test in passing in 2009 when addressing the separate question of whether a lawyer who represents himself or herself may recover attorneys' fees under FOIA's fee shifting provision. See Pietrangelo v. U.S. Army, 568 F.3d 341, 344 (2d Cir. 2009).  The Second Circuit has never been presented the explicit question whether to adopt the D.C. Circuit's four-factor test, however, and several judges within the D.C. Circuit have opined that the four-factor test should be abandoned.  See, e.g., Morley v. C.I.A., 719 F.3d 689, 690 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("We should ditch the four-factor standard. . . . [T]he four factors have no basis in the statutory text. . . Rather than mandating a four-factor standard, FOIA grants courts discretion to determine when attorney's fees should be awarded."); Davy v. C.I.A., 550 F.3d 1155, 1166 (D.C. Cir. 2008) (Randolph, J., dissenting) ("It is time to recognize that this test is a legal relic.").  In any event, even where the four-factor test applies, "[n]o one factor is dispositive, except that the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." Kwoka v. Internal Revenue Serv., 989 F.3d 1058, 1064 (D.C. Cir. 2021) (citation and internal quotation marks omitted).  See also Am. Oversight, 375 F. Supp. 3d at 65 (D.D.C. 2019) ("The four-factor framework is ultimately 'a heuristic, a somewhat crude

mechanism for testing whether fees in a particular case are consistent with the purposes for which Congress subsidized FOIA litigation.'" (citation omitted)).  Its application is "left to the Court's discretion."  Pinson v. Lappin, 806 F. Supp. 2d 230, 235 (D.D.C. 2011); Bolze v. Exec. Off. for United States Att'ys, No. 17-CV-2858-FYP, 2021 WL 5564633, at *9 (D.D.C. Nov. 29, 2021) ("The decision to award costs and fees is left to the Court's discretion.").

On the peculiar facts of this case, Plaintiff is both eligible for and entitled to an award of costs.  Twice this Court issued judicial orders granting Plaintiff some relief, first through an Order directing the EOUSA to perform a search for responsive documents in the first instance (docket entry no. 32) and second through an order directing the agency to perform a more thorough search for responsive documents after its initial search was inconsistent and incomplete (docket entry no. 47).  These searches—which would not have occurred at all but for Plaintiff's lawsuit—yielded the production to Plaintiff of at least one document, as well as the identification of the relevant writ of habeas corpus ad testificandum, the existence of which Plaintiff had long sought to confirm.  This relief may be relatively minimal—like the amount of Plaintiff's requested costs—but is sufficient to trigger section 552(a)(4)(E)(i).  Edmonds v. F.B.I., 417 F.3d 1319, 1327 (D.C. Cir. 2005) ("[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." (citation omitted)).

Even assuming the applicability of the above-referenced four-factor test, Plaintiff is also entitled to the small award he seeks.  The public has little interest in this action, and the second and third factors are essentially neutral given that disclosure was sought principally for Plaintiff's personal (albeit noncommercial) use, based on his interest in understanding the process by which he was transferred to and from federal custody.  Even if that interest did not

overcome Rule 6(e)'s secrecy protections, it is a legitimate one. Moreover, the Court concludes that the fourth factor—the reasonableness of the agency's withholding of the requested documents—weighs in favor of an award and outweighs the other factors in this case. While they did not constitute bad faith, the EOUSA's failure to conduct any search at all in response to at least two separate FOIA requests from the Plaintiff until ordered to do so by the Court, and subsequent flawed search for responsive records, were sufficiently unreasonable to justify an award of costs against the agency. That is particularly so where Plaintiff's FOIA requests were relatively tailored to the issue as to which he sought information—the documentation (or lack thereof) of his transfer to and from federal custody. The three-year period between Plaintiff's first FOIA request to the agency and the agency's revelation that such documentation indeed existed also warrants an award of costs to the Plaintiff here.

Plaintiff requests $500 in costs, consisting of Plaintiff's $350 filing fee and "more than $150.00 in mailing and copy fees." (Motion at 7-8.) Plaintiff is entitled to reimbursement of his statutorily required filing fee, which he paid in full on July 28, 2020. See 28 U.S.C.A. § 1915(b)(1) ("if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee"). (See also docket entry no. 5 ("[a] prisoner bringing a civil action is required to pay the full $350 filing fee even when proceeding in forma pauperis").) Moreover, while the Court may not award costs which Plaintiff has not documented (see Opp. at 7-8)—and Plaintiff has not proffered any admissible evidence of his mailing and copy fees here—the envelopes of Plaintiff's mailings to the Court evidence, by the Court's calculation, no less than $51.89 in postage fees incurred in litigating this case. The Court therefore awards Plaintiff a total of $401.89 ($350 + $51.89) in costs incurred.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Reconsideration is granted to the extent it seeks an award of Plaintiff's costs incurred in this action, in the amount of $401.89, and is otherwise denied. Defendant shall reimburse Plaintiff's costs within thirty days of the date of this Memorandum Order.

This Memorandum Order resolves docket entry no. 82.

SO ORDERED.

Dated: New York, New York
       June 22, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy mailed by chambers to:**
Plaintiff John Smith